UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SANTONIO MURRAY,
An Individual,
    Plaintiff,

Case #:

Hon.

VS.

JP MORGAN CHASE BANK, N.A.
A Corporation.,

---

**COMPLAINT AND JURY DEMAND**

Now Comes Plaintiff, Santonio Murray, by and through his attorneys the Law Offices of Ivan L. Land, P.C. and states the following in his Complaint.

## PARTIES

1. PLAINTIFF, Santonio Murray (hereinafter "PLAINTIFF"), resides in Oakland County, Michigan.

2. DEFENDANT, JP Morgan Chase Bank, N.A. (hereinafter "CHASE BANK"), upon information and belief, is a national banking institution that owns and operates over 200 established offices in the Eastern District of Michigan.

1

## JURISDICTIONAL ALLEGATIONS

3. This action is brought pursuant to 42 U.S.C. §1981, as Plaintiff brings this action against JP Morgan Chase Bank, N.A., for racial discrimination.

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, §1343, and §1367.

5. Venue is proper under 28 U.S.C. §1391(b), as the events giving rise to the claims asserted in this complaint occurred within this district.

## FACTUAL ALLEGATIONS

6. On or around May 1, 2025, PLAINTIFF received a tax refund check from the United States Treasury Department (hereinafter "IRS").

7. The check was in the amount of $413,168 (See Exhibit 1, Check).

8. On May 1, 2025, PLAINTIFF deposited the check into his CHASE BANK account located at 32481 Chesterbrook St., Farmington Hills, MI 48334-2719.

9. A hold was placed on the check for 11 days and PLAINTIFF was told that the funds would be available on or before May 12, 2025 (See Exhibit 2, Deposit Receipt).

10. On May 12, 2025, PLAINTIFF attempted to log into his CHASE BANK Mobile account to access some money, but was unsuccessful.

11. PLAINTIFF called CHASE BANK to inquire about why his mobile account was not working, and he was directed to CHASE BANK's Fraud Department.

12. PLAINTIFF contacted CHASE BANK Fraud Department, and he was then directed to CHASE BANK's back office.

13. A CHASE BANK back-office employee informed PLAINTIFF that the IRS was being contacted to determine if the check was authentic.

14. PLAINTIFF was told this verification could take up to thirty days.

15. On May 21, 2025, PLAINTIFF learned that the verification did not take thirty days, so PLAINTIFF contacted a CHASE BANK representative by telephone, and learned that the check had been verified by the IRS on May 2, 2025. (See Exhibit 3) *

16. PLAINTIFF could not get any answers from the location where the account was opened.

17. So, PLAINTIFF decided to go into the CHASE BANK located at 38601 West Twelve Mile Rd., Farmington, MI 48331, to discuss the check issue.

18. A CHASE BANK representative stated to PLAINTIFF, "we've been getting a lot of fraudulent checks from you people," directly referencing PLAINTIFF's race.

19. Furthermore, during that same visit, PLAINTIFF was also told by one of CHASE BANK's employee when she was shown his W-2 Form, "at least you did one smart thing, you withheld $180,006.00 in your gambling winnings to

3

*This telephone call was recorded.

pay your taxes. I don't know if you thought of that yourself or if someone told you to do that, but that was smart." (See Exhibit 3, W-2 Form).

20. These statements humiliated PLAINTIFF, who understood to be derogatory and racist comments suggesting African Americans were more likely to commit fraud, were not intelligent, and that they didn't pay taxes.

21. PLAINTIFF was then directed to contact someone from their fraud department.

22. PLAINTIFF spoke with an employee named Jennifer who stated she would be working on his fraudulent check claim.

23. PLAINTIFF was again humiliated hearing that he was being accused of fraud.

24. These accusations were being made despite the fact that CHASE BANK had verified the check with the IRS on May 2, 2025.

25. On May 27, 2025, Jennifer instructed PLAINTIFF to send in his tax returns, his tax transcripts, and any other supporting documentation to verify the legitimacy of the tax refund check.

26. CHASE BANK's request to review PLAINTIFF's tax filings was troubling because this request is not CHASE BANK's job.

27. PLAINTIFF complied with Jennifer's demands and submitted the requested information to CHASE BANK.

4

28. PLAINTIFF was accused of filing fraudulent tax returns with a potentially fake social security number. These accusations were false, malicious, and racially motivated.

29. PLAINTIFF was told that despite what the IRS had determined – his tax returns were fraudulent.

30. CHASE BANK demanded that PLAINTIFF be available to schedule a conference call with the IRS to discuss his fraudulent filing of his income tax return.

31. PLAINTIFF spoke to CHASE BANK and the IRS representative on a conference call, and again the IRS verified the PLAINTIFF's information.

32. Then, towards the end of June of 2025, PLAINTIFF received a call from Jennifer stating there was nothing she could do, it was out of her hands, and that PLAINTIFF had to contact the IRS.

33. On July 20, 2025, Jennifer informed PLAINTIFF that CHASE BANK would be returning the money back to the IRS.

34. PLAINTIFF contacted the IRS and learned that the IRS refused to reclaim the money from CHASE BANK, and told the CHASE BANK's representative to release the money to PLAINTIFF.

35. CHASE BANK refused to release PLAINTIFF's money, and closed his account, further compounding the harm to his reputation and financial stability.

36. PLAINTIFF further learned that CHASE BANK was planning to send PLAINTIFF's money to the state of Michigan as unclaimed funds.

37. CHASE BANK's actions were not the result of ordinary business practices, but were rooted in racial bias and discriminatory treatment of PLAINTIFF as an African American customer.

38. As of the filing of this complaint, CHASE BANK has not released $413,168 to PLAINTIFF.

## COUNT ONE
## 42 U.S.C. § 1981

39. PLAINTIFF incorporates by reference the above paragraphs.

40. Under 42 U.S.C. § 1981, all persons within the jurisdiction of the United States have the same right as white citizens to make and enforce contracts, to sue, to give evidence, and to enjoy the full and equal benefit of all laws.

41. The relationship between PLAINTIFF and CHASE BANK, including the acceptance of deposits and access to account funds, constitutes a contractual relationship within the meaning of § 1981.

42. CHASE BANK intentionally interfered with PLAINTIFF's contractual rights by:

    a. singling him out for heightened scrutiny of his deposit based on his race;

    b. making racially derogatory remarks such as "you people," which reflected discriminatory intent;

    c. accusing him of fraudulent tax filings and use of a false Social Security number despite having no legitimate factual basis; and

    d. closing his account and withholding funds despite confirmation of the check's authenticity.

43. These actions and comments were not taken against similarly situated white customers, but rather were directed at PLAINTIFF because of his race and ethnicity.

44. As a direct and proximate result, PLAINTIFF suffered denial of equal treatment in the making and enforcement of contracts, financial injury, loss of access to his own funds, humiliation, severe emotional distress, and damage to his dignity.

## COUNT TWO
## DEFAMATION

45. PLAINTIFF incorporates by reference the above paragraphs.

46. Defendants, acting through their employees and representatives, published false statements of fact about PLAINTIFF, including but not limited to:

    a. that PLAINTIFF submitted fraudulent tax returns; and

    b. that PLAINTIFF used a fake Social Security number.

47. These statements were communicated to third parties, including CHASE BANK staff, supervisors, and outside agencies such as the IRS.

48. The statements were not mere opinion but assertions of fact that directly impugned PLAINTIFF's honesty, integrity, and lawfulness.

49. Such statements are defamatory per se because they accuse PLAINTIFF of crimes involving fraud and dishonesty.

50. Defendants made the statements negligently, recklessly, or with actual malice, knowing them to be false or with reckless disregard for their truth or falsity.

51. As a direct and proximate result, PLAINTIFF has suffered severe damage to his personal and professional reputation, severe emotional distress, and financial loss.

**WHEREFORE**, PLAINTIFF prays for:

   a. Twenty-Five Million dollars ($25,000,000.00) in Non-Economic, Economic, and Punitive damages against Chase Bank to compensate Plaintiff, Santonio Murray, for their actions;

b. Reasonable attorney fees, costs, and interest pursuant to 42 U.S.C. §1988; and,

c. Such other and further relief as appears reasonable and just under the circumstances.

Dated: September 9, 2025

/s/Ivan L. Land
Ivan L. Land (P65879)
Law Offices of Ivan L. Land, P.C.
25900 Greenfield Rd., Suite 210
Oak Park, MI  48237-1267
248.968.4545 / (f) 248.968.4540
ill4law@aol.com
**Attorney for PLAINTIFF**

## VERIFICATION

Santonio Murray, being duly sworn, deposes and says:

I am the plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same are true to my knowledge, except as to matters therein stated to be alleged on information and belief and as to those matters I believe them to be true.

Date: 9/9/25

Santonio Murray

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

SANTONIO MURRAY,
An Individual,
    Plaintiff,

Case #:

Hon:

VS.

JP MORGAN CHASE BANK, N.A.
A Corporation.,

---

## JURY DEMAND

Plaintiff, Santonio Murray, demands a Trial by jury.

Dated: September 9, 2025

/s/Ivan L. Land
Ivan L. Land (P65879)
Law Offices of Ivan L. Land, P.C.
25900 Greenfield Rd., Suite 210
Oak Park, MI  48237-1267
248.968.4545 / (f) 248.968.4540
ill4law@aol.com
**Attorney for PLAINTIFF**